NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260437-U

NO. 4-26-0437

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| DUSTIN J. DUNN, | ) | No. 26CF40 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Gregory M. Minger, |
| | ) | Judge Presiding. |

---

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court affirmed, holding the trial court did not err by finding
defendant posed a real or present threat to the safety of any person or persons or
the community and that no conditions of pretrial release could mitigate the threat
he posed.

¶ 2     Defendant, Dustin J. Dunn, appeals the trial court's order denying him pretrial

release. Defendant contends the court erred by finding the State had proven by clear and

convincing evidence that he posed a real or present threat to the safety of any person or persons

or the community or that there were no conditions of pretrial release that could mitigate any

threat he posed. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On March 4, 2026, a grand jury charged defendant with possession of child abuse

material (720 ILCS 5/11-20.1(a)(6) (West 2024)), grooming (*id.* § 11-25), and distributing

harmful material (*id.* § 11-21(b)(1)(A)). On March 9, 2026, defendant was arrested in connection with the instant case. That same day, the State filed a petition to deny defendant pretrial release, alleging that his release posed a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case.

¶ 5　　　　A pretrial investigation report was prepared. The report stated that defendant was 30 years old, had been married for 3 years, and had no prior criminal convictions. The report stated that defendant had 21 pending criminal charges in Kane County for similar offenses to those charged in the instant case. Defendant scored 3 out of 14 on the Virginia Pretrial Risk Assessment Instrument—Revised (VPRAI-R).

¶ 6　　　　On March 11, 2026, a detention hearing was held. The State proffered that in February 2026, a detective was contacted by an investigator from the Kane County State's Attorney's Office regarding a child pornography case involving defendant. The investigator told the detective that Kane County's investigation revealed that defendant had been communicating with multiple underage victims online through various communication apps, including 15-year-old B.W., who resided in Woodford County. B.W.'s family agreed to turn over all electronic devices to the detective to be analyzed. The detective found that defendant had been communicating with B.W. over Snapchat. B.W. told the detective that defendant had added her on Snapchat "by the quick-add feature." He told her he was 19 years old, and she asked "don't you think that's a little weird." Defendant then started asking her sexual questions and requesting pictures from her. She sent him a topless picture of herself, and he sent her a "video of himself having sexual intercourse with a teddy bear." B.W. stated defendant had requested to meet her in person, but she had not done so.

¶ 7　　　　The State proffered that a review of reports from Kane County showed defendant

had also been talking to a 15-year-old girl from Kane County on Snapchat. Law enforcement officers questioned defendant, and he admitted he had been talking to the girl and that he made sexual videos with teddy bears. Officers discovered that one girl from Kane County had sent defendant a sexual video of herself. After analyzing defendant's phone, law enforcement officers in Kane County indicated that the data on the phone suggested that there were "well over 30 and up to 60 potential minor victims." The state's attorney in McHenry County reported that she believed there were 20 victims in McHenry County alone. Defendant's phone showed "numerous sexual chats, videos, and pictures being exchanged between him and these minors." Most of this activity occurred in January 2026.

¶ 8        At defense counsel's request, the trial court admitted into evidence a pretrial release order from Kane County releasing him with special conditions and no pretrial supervision. The order stated that defendant was to have no contact with two specified victims and no contact with any individual under 18 years old unless supervised by an adult. It also stated that defendant was to remain at his parents' house in Kansas at all times unless seeking employment and that he was not to access the internet or possess an internet-capable device.

¶ 9        Defense counsel argued that defendant should be released with similar conditions to those imposed in Kane County, including no access to electronic communication devices. Counsel stated that defendant was not violent, defendant had no criminal background, and the charged offenses were probation-eligible. Counsel asserted that defendant could live in Kansas with his parents or stay in Illinois. Counsel also stated that defendant had begun therapy and he could work in either Kansas or Illinois.

¶ 10        The trial court found the State had proven that the proof was evident or presumption great that defendant had committed a detainable offense. The court also found the

State had proven defendant posed a real or present threat to the safety of the community. Specifically, the court found defendant was a danger to "any female that he comes into contact with through Internet devices." The court found that the number of individuals defendant had been contacting was "astounding." The court also found that no condition or combination of conditions of pretrial release could ensure the safety of the community. The court stated, "[A]ll we have right now is the defendant's word he's not going to do it." The court stated there was no monitoring that could take place if defendant was living with his parents in Kansas, and the monitoring available in Illinois was "still not great." The court also noted that defendant had lied to the victim about his age and stated it had no confidence that defendant's behavior would not continue if he was released. The court advised defendant that he needed to file a motion to reconsider if he wanted to appeal the court's ruling.

¶ 11        The trial court entered a written detention order reflecting these findings. In the order, the court also stated that defendant was a danger to any minor, monitoring his internet usage was "near impossible," and it had no confidence that any conditions of release could reasonably stop defendant's behavior and protect minors.

¶ 12        On March 31, 2026, defendant filed a motion to reconsider his pretrial detention, asserting that he did not pose a real or present threat to the safety of any person or persons or the community and that there "may be" conditions of release that could mitigate any threat he posed.

¶ 13        On April 2, 2026, a hearing was held on defendant's motion to reconsider. Defendant's mother testified that she, her husband, and her adult daughter resided on a six-acre property in Kansas. She stated that defendant could live with them and work at their family business repairing automated teller machines. The family lived outside the city and there would be no reason for defendant to come into contact with any minors at their home. The family would

- 4 -

monitor defendant to make sure he was "following rules." All computers, phones, tablets, and other electronics in the house could be locked up and made inaccessible to defendant. Although defendant's mother indicated that defendant's former marital residence in Illinois was also an option, defendant's wife had requested that it be a last resort.

¶ 14 Defense counsel asked that the trial court reconsider its detention ruling. Counsel noted defendant had never had any physical contact with a minor, had no criminal history, and received a low score on the VPRAI-R. Counsel stated defendant could live either in Kansas with his parents or with his wife in Illinois. He stated defendant had indicated he would comply with any conditions the court imposed.

¶ 15 The trial court asked the State what the time frame was between the first time defendant allegedly contacted a victim and the last one. The State initially stated that it believed it was January 2026 through March 2026. However, the State later asserted that "in flipping through the reports from Kane County it looks like some of the records of conversation go back to March of '25," though these did not involve the victim in the instant case.

¶ 16 The trial court denied the motion to reconsider. The court noted that although many of defendant's conversations with victims took place in 2026, there were some that went back to March 2025. The court stated it still believed defendant was a danger to the community at large and, specifically, to individuals under the age of 17, who are unable to consent to sexual acts or to "these types of communications and images." The court stated that defendant "was asking for sex, asking to meet up, sending pictures that caused abuse," and his actions harmed the victims emotionally. The court stated it may have had a different opinion on dangerousness if there had only been one victim, but the evidence indicated this was alleged to have happened to 30 to 60 victims. The court also found that no conditions of release could mitigate the threat

defendant posed because it would be very difficult, if not impossible, to monitor his internet usage, even if he stayed in Illinois. The court stated that relying on defendant's family to monitor him was not good enough.

¶ 17 Defendant filed a notice of appeal.

¶ 18        II. ANALYSIS

¶ 19 On appeal, defendant has filed a memorandum pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). In his memorandum, defendant argues that the State failed to prove by clear and convincing evidence that he posed a threat to the safety of the community and that no conditions of release could mitigate that threat.

¶ 20 All defendants are presumed eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2024). However, when the State files a verified petition, the trial court shall hold a detention hearing and may deny pretrial release if the defendant is charged with a detainable offense and the State proves that (1) the proof is evident or presumption great that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case, and (3) no condition or combination of conditions of pretrial release can mitigate this threat. *Id.* § 110-6.1(e)(1)-(3); see *People v. Morgan*, 2025 IL 130626, ¶ 24. The State must prove each of these requirements by clear and convincing evidence. *Morgan*, 2025 IL 130626, ¶ 24.

¶ 21       A. Motion for Relief

¶ 22 Initially, defendant acknowledges that Rule 604(h)(2) required him to file a motion for relief in the trial court before appealing the court's detention order. Rule 604(h)(2) provides:

  "As a prerequisite to appeal, the party taking the appeal shall first present to the

trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 23 Defendant argues that his motion to reconsider was, in substance, a motion for relief and should be treated as such on appeal. The State does not challenge defendant's position that the motion to reconsider should be treated as a motion for relief and, accordingly, has forfeited any such argument. See *People v. Farah*, 2025 IL App (4th) 250322-U, ¶ 27. Accordingly, we will treat the motion to reconsider as a motion for relief under Rule 604(h)(2). See *id.*

¶ 24 While the State does not challenge defendant's position that the motion to reconsider was, in substance, a motion for relief, the State contends that defendant improperly argues in his memorandum points that were not contained in the motion to reconsider and, accordingly, has waived these arguments. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived."). Specifically, the State asserts that the motion to reconsider merely asserted that defendant was not dangerous, whereas the memorandum argued that the trial court failed to make an individualized finding of dangerousness and instead relied upon the charges themselves to determine dangerousness. The State also contends that the motion to reconsider merely asserted that there "may be" conditions of release that could mitigate any threat posed by defendant, while the memorandum argued that there was no individualized evidence that defendant would violate the conditions of release.

¶ 25 We reject the State's argument. While the allegations in the motion to reconsider were fairly vague, the arguments in the memorandum are consistent with both the motion to reconsider and the arguments made by defense counsel at the hearing on the motion to reconsider. The memorandum did not raise entirely new issues, as prohibited by Rule 604(h)(2); rather, it merely elaborated on the issues that were raised in the motion. Rule 604(h)(7) contemplates that a memorandum may function in such a way. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("Whether made in the motion for relief alone or as supplemented by the memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities.").

¶ 26                           B. Standard of Review

¶ 27 Where no live witness testimony is presented and the parties proceed solely by proffer and documentary evidence, we review the trial court's detention decision *de novo*. *Morgan*, 2025 IL 130626, ¶ 44. However, when live testimony is presented at a pretrial detention hearing, both the court's factual findings and ultimate detention ruling will not be disturbed on review unless they are against the manifest weight of the evidence. *Id.* ¶ 43.

¶ 28 The State acknowledges that our review should be *de novo* in the instant case because, while live testimony was presented at the hearing on the motion to reconsider, no live testimony was presented at the initial detention hearing. We agree with the State and will apply the *de novo* standard of review.

¶ 29                            C. Dangerousness

¶ 30 We now consider defendant's argument that the trial court erred by finding the State proved by clear and convincing evidence that he posed a threat to the safety of any person

or the community. Specifically, defendant notes that he is a "first-time offender," has no history of violence, had no in-person contact with any minor, and demonstrated a record of compliance with the pretrial release conditions imposed in Kane County. He contends that the State presented no individualized evidence that he presented a real threat.

¶ 31 Section 110-6.1(g) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(g)(1)-(9) (West 2024)) provides a nonexhaustive list of factors the trial court is to consider in determining whether a defendant poses a real or present threat to the safety of the community. These factors include:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

- 9 -

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 32    Here, the trial court did not err by determining defendant posed a real or present threat to the safety of any person or persons or the community. The court's determination was supported by the nature and circumstances of the offense, the history and characteristics of defendant, and the age of the victim. Specifically, the State's evidence indicated that defendant had sought out 15-year-old B.W. on Snapchat, lied about his age, solicited a partially nude photograph from her after learning her age, and sent her a sexually explicit video of himself. While defendant had no prior criminal convictions, the State's evidence showed that the charged conduct in the instant case was not an isolated incident. Rather, the State's evidence indicated defendant had online communications with 30 to 60 other minors in other counties, and he was facing criminal charges for this conduct in Kane County. While there was no evidence that defendant had engaged in any in-person conduct with a minor, B.W. told officers that defendant

- 10 -

had asked to meet with her.

¶ 33    This case is factually distinguishable from the cases cited by defendant, in which the courts found that the defendants' possession of child sexual abuse material on their electronic devices was insufficient to establish that they posed a real or present threat to the safety of the community. See *People v. Shaffer*, 2024 IL App (4th) 240085-U, ¶¶ 24-25; *People v. Milam*, 2024 IL App (2d) 240027-U, ¶¶ 11-12. Unlike *Milam* and *Shaffer*, this case does not merely involve the possession of "images of past trespasses upon the privacy of minor victims." *Milam*, 2024 IL App (2d) 240027-U, ¶ 11. Rather, the evidence showed defendant had communications of a sexual nature with numerous minors living in Illinois via online messaging apps, requested and obtained sexually explicit photographs and videos from them, and requested an in-person meeting with at least one of them.

¶ 34    D. Conditions of Release

¶ 35    Defendant next argues that the trial court erred by finding the State had proven by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate any threat he posed to the safety of the community. Defendant contends that there was no individualized evidence that he would violate conditions of release. He asserts that the conditions of release imposed in Kane County were effective because he had successfully been on pretrial release in that case since March 6, 2026.

¶ 36    Section 110-6.1(e)(3) of the Code (725 ILCS 5/110-6.1(e) (West 2024)) requires trial courts to presume defendants are eligible for pretrial release and provides that release can be denied only where the State proves that no combination of conditions can mitigate—not completely eliminate—the real and present threat posed by the defendant. See *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U, ¶ 31.

- 11 -

¶ 37		Section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2024)) provides that, in determining which conditions of pretrial release, if any, will reasonably ensure the safety of any person or the community and the likelihood the defendant will comply with the conditions of release, the trial court shall consider, *inter alia*, such factors as (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the threat to the safety of any person or the community based on the specific, articulable facts of the case that would be posed by the defendant's release. In considering the history and characteristics of the defendant, the courts are to consider "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings." *Id.* § 110-5(a)(3)(A). The court is also to consider whether the defendant was on probation, parole, or other release at the time of the charged offense. *Id.* § 110-5(a)(3)(B).

¶ 38		Bare allegations that a defendant committed a detainable offense are insufficient to establish that no combination of conditions can mitigate the threat posed by the defendant. See *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 ("If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release."). "[A] court should not rule out pretrial release for a defendant based on a general perception that conditions of release are loosely monitored," but trial courts may properly consider whether there is reason to believe the defendant is likely to violate the imposed conditions. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

¶ 39      Here, the trial court did not err by finding no condition or combination of conditions of pretrial release could mitigate the risk defendant posed to the safety of the community. We acknowledge that there were some factors weighing in favor of release in this case, including defendant's lack of prior criminal convictions, his relatively low risk score on the VPRAI-R, and the fact that he was engaging in therapy. However, the evidence showed that, in addition to the victim in the instant case, defendant had communicated with 30 to 60 other minors via online messaging apps. According to the State, defendant's phone "showed numerous sexual chats, videos, and pictures being exchanged between him and these minors." While conditions of release, like electronic monitoring and home confinement, could protect against the risk that defendant would meet with a minor, such conditions could not mitigate the risk that he would have further inappropriate communications with minors online. As the court noted, monitoring defendant's ability to access the internet would be difficult or impossible, especially if he were to live Kansas with his parents. The court's concerns about the inability to monitor defendant's internet access were related to the specific facts of this case, as the State's proffer indicated that defendant used online messaging apps not only to commit the charged offenses but also to commit similar offenses involving numerous other minors.

¶ 40      We reject defendant's argument that release was proper because he had successfully complied with the conditions of release entered in Kane County for five weeks before the hearing on his motion to reconsider, which "provid[ed] concrete proof that the conditions were effective." The record shows this is factually inaccurate. The pretrial release order in Kane County was entered on March 6, 2026. Defendant was arrested in Woodford County on March 9, 2026, and was never released from custody after his arrest. Thus, he was on pretrial release in Kane County for only three days before he was taken into custody. The fact

that there was no evidence that he violated the conditions of his release during this brief period of time does not show the conditions were effective.

¶ 41                              III. CONCLUSION

¶ 42            For the reasons stated, we affirm the trial court's judgment.

¶ 43            Affirmed.